UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CHRISTOPHER ROBERTSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:18-cv-01570-JAR |
| | ) |
| CITY OF SAINT LOUIS, MISSOURI, et al., | ) |
| | ) |
| Defendants. | ) |

**<u>MEMORANDUM AND ORDER</u>**

Plaintiff Christopher Robertson claims that while attending protest activity following the September 15, 2017, verdict in *State of Missouri v. Stockley*, St. Louis Metropolitan Police Department (SLMPD) officers unlawfully "kettled,"[1] pepper sprayed, assaulted, and arrested him. Robertson brings this civil rights action under 42 U.S.C. § 1983 against several SLMPD officers alleging violations of his First, Fourth, and Fourteenth Amendment rights, and against the City of St. Louis alleging municipal liability for their unlawful actions. Robertson also brings supplemental state law claims against Defendants, alleging assault, intentional and negligent infliction of emotional distress, and battery. This is one of several cases arising out of SLMPD officers' conduct with respect to the *Stockley* protests.

As have the defendants in the other cases, the City and six of the individual supervising officers ("Supervisors") named as Defendants here move to dismiss or, alternatively, to strike Robertson's second amended complaint. For the following reasons, the Court will dismiss Robertson's failure-to-train claim and his request for punitive damages on the state-law claims

---

[1] According to the complaint, "kettling" is a law enforcement tactic by which officers encircle a group of demonstrators or protestors without providing a means of egress.

against the City and the Supervisors in their official capacities only; the Court will otherwise deny the motion.

## BACKGROUND

Taken as true for the purpose of this motion, the facts alleged in the second amended complaint are as follows. On September 15, 2017, the Circuit Court of the City of St. Louis issued its findings and verdict in *Stockley*, prompting some members of the public to engage in protests around the City. The protests concerned not only the verdict but broader issues, including racism in the criminal justice system and the use of force by police officers against African-American citizens. Although most of the protests were non-violent, SLMPD officers "amassed at several protests wearing military-like tactical dress, helmets, batons, and full-body riot shields and carrying chemicals." (Doc. No. 32 at ¶ 30).

On September 17, 2017, Robertson attended a protest in downtown St. Louis because he was "curious about what motivated the protestors." (*Id.* at ¶129-130). Around 10:30 p.m., Robertson was part of a small gathering on Locust Street and 11th Avenue. A line of about 50 police officers had formed to the east, creating a barrier with their bikes and preventing individuals from continuing in that direction. After several minutes, Robertson heard SLMPD officers tell the protestors to leave the area. He and others attempted to comply with the order by moving west on Locust. A crowd of about 30 individuals, including Robertson, approached Tucker Boulevard, where another line of SLMPD officers had formed. The police officers began shouting "Move back!" without providing clear instructions about where people should go. (*Id.* at ¶ 137). SLMPD officers then began pushing the crowd north on Tucker toward Washington Avenue. At no time had SLMPD officials given any additional dispersal orders after telling people to move west on Locust and north on Tucker.

Then, without first providing a warning, a command, or an opportunity to leave the area, SLMPD officers kettled Robertson and others at the intersection of Washington Avenue and Tucker Boulevard. Robertson attempted to leave the area but was prevented from doing so by riot police advancing from every direction. Then, without warning, Robertson was sprayed in the face with pepper spray by SLMPD officers, who were indiscriminately spraying the crowd. Robertson lowered himself to the ground, attempting to comply with often contradictory orders from SLMPD officers. He was ultimately arrested and his hands zip tied. Robertson alleges that during and after the arrests, SLMPD officers were observed high fiving each other, smoking celebratory cigars, taking "selfies" on their cell phones with arrestees against the arrestees' will, and chanting "Whose Streets? Our Streets!" (*Id.* at ¶ 97).

Robertson was detained at the St. Louis City Justice Center for 15 hours, plus another five hours after his bond had been paid. He was told he was being charged with unlawful assembly; however, he was actually charged with failure to disperse.

Robertson's 13-count second amended complaint names the City and several SLMPD officers alleged to be involved in the relevant events. The Supervisors who have moved for dismissal are: Lieutenant Colonel Gerald Leyshock, the incident commander during the events of September 17, 2017, who allegedly approved the plan to restrict the movement of individuals who were attempting to leave the vicinity of Washington Avenue and Tucker Boulevard and to arrest everyone present; Lieutenant Timothy Sachs, who allegedly developed the plan described above, deployed the tactical units accordingly, and ordered the use of chemical agents; Lieutenant Scott Boyher, who allegedly directed the officers under his command in using their bicycles to block Robertson's path, and directed the officers to use force and to arrest the protestors in Robertson's group; Sergeant Matthew Karnowski, who allegedly declared the protests an "unlawful assembly,"

which SLMPD used as a predicate to the arrests and use of the chemical agents, and also directed the officers under his command to use force and to arrest the protestors in Robertson's group; Sergeant Randy Jemerson, who allegedly directed people to the intersection of Washington and Tucker pursuant to the plan described above; and Sergeant Brian Rossomanno, who also allegedly directed people to the intersection, and was "within arms-length" of the officers who pepper sprayed and used force against the protestors in Robertson's group. Robertson also names the arresting officer, Daniel Chamblin,[2] as well as John Does #1-5, who were further involved in arresting, pepper spraying, and assaulting Robertson but who removed their name tags and wore masks concealing their faces, thereby preventing Robertson from identifying them.

Robertson asserts unlawful arrest (Count I), First Amendment (Count II), and excessive force (Count XII) claims against the individual officers pursuant to § 1983. He also asserts § 1983 claims against the City (Count IV) alleging municipal liability for the officers' unlawful actions and against all Defendants (Count III) alleging that Defendants "acting in their individual capacities and under color of law, conspired together and with others, and reached a mutual understanding to undertake a course of conduct that violated Plaintiff's civil rights." (*Id.* at ¶ 177). Finally, Robertson asserts supplemental state-law claims against all Defendants alleging assault (Count V), false arrest (Count VI), false imprisonment (Count VII), abuse of process (Count VIII), malicious prosecution (Count IX), intentional infliction and negligent infliction of emotional distress (Counts X and XI), and battery (Count XIII).

---

[2] Upon review of the record, the Court notes that the file contains no proof of service by Plaintiff upon Defendant Daniel Chamblin, nor entry of appearance on behalf of this Defendant.

The City and Supervisors[3] move to dismiss the amended complaint for failure to comply with the "short and plain statement" requirement of Fed. R. Civ. P. 8(a). Alternatively, the City and the Supervisors move to strike certain paragraphs of the amended complaint under Fed. R. Civ. P. 12(f) as immaterial or impertinent. The allegations and exhibits to which the City and Supervisors object concern the *Stockley* verdict, the nature of public protests in response thereto, and prior orders of this Court concerning SLMPD actions in response to public protests.

The Supervisors also move to dismiss Robertson's § 1983 claims under Rule 12(b)(6), arguing that Robertson fails to allege that the Supervisors personally participated in the use of force. As to the state-law claims, the Supervisors argue that they should be dismissed under Missouri's official immunity doctrine. The Supervisors and the City also argue that the infliction of emotional distress claims are not actionable because the same facts give rise to another cognizable tort, namely, assault, and that the claims alleging battery and assault are duplicative.

The City moves to dismiss Robertson's § 1983 conspiracy claim on the basis that it is barred by the intracorporate conspiracy doctrine, citing *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1078 (8th Cir. 2016). The City contends that, as Eighth Circuit held in *Kelly*, a local government entity cannot conspire with itself through its agents acting within the scope of their employment. The City further argues the civil conspiracy claim fails because the underlying claims on which it is based fail.

Next, the City moves to dismiss Robertson's § 1983 claim, arguing that it fails to adequately allege municipal liability under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978). Finally, the City argues that Robertson's state-law claims against it are

---

[3] Defendants' motion to dismiss states it is filed "exclusive of 'John Doe' defendants and defendant Officer Trenton Lee."

barred by sovereign immunity and that, in any event, Mo. Rev. Stat. §537.610.3 precludes the recovery of punitive damages against it on the state-law claims.

## DISCUSSION

The undersigned recently addressed the arguments presented by the parties here in the context of another case arising out of the *Stockley* protests, in which the City and Supervisors filed a nearly identical motion to dismiss in response to a substantially similar complaint, *Thomas v. City of St. Louis, Mo.*, 4:18-cv-01566-JAR, 2019 WL 3037200 (E.D. Mo. July 11, 2019). The Court concluded in *Thomas* that the plaintiff failed to state a failure-to-train-or-supervise claim against the City under *Monell* because the plaintiff pled conclusory factual allegations with respect to the alleged deficiencies in training and supervision. *Id.* at *6. The Court further concluded that the plaintiff could not recover punitive damages on the state-law claims against the City or the Supervisors in their official capacities, pursuant to Mo. Rev. Stat. § 537.610.3. *Id.* at *8.

However, the Court concluded that the motion to dismiss in *Thomas* was otherwise without merit. Specifically, the Court found that the complaint's factual allegations and supporting exhibits regarding the *Stockley* verdict, the nature of public protests in response thereto, and prior orders of this Court concerning SLMPD actions in response to public protests, were relevant to the plaintiffs' claims and that neither dismissal under Rule 8(a) nor striking under Rule 12(f) was warranted. *Id.* at *4. Next, the Court found that the plaintiff adequately alleged the Supervisors' direct involvement in planning, approving, and/or executing the alleged uses of force so as to support the § 1983 excessive force claims against them. *Id.* at *5.

The Court further found that it was inappropriate to apply the intracorporate conspiracy doctrine to the plaintiff's § 1983 conspiracy claim, at least at the pleading stage, and that the conspiracy was sufficiently supported by allegations of underlying constitutional violations. *Id.* at

*5.  With respect to the plaintiffs' remaining § 1983 *Monell* claims against the City, the Court found that the plaintiff's factual allegations regarding the SLMPD's pattern of using chemical agents without warning against peaceful protestors complaining of police actions plausibly stated a claim against the City based on an unconstitutional policy or custom.  *Id.* at *6.

As to the plaintiff's state-law claims against the City, the Court held that the plaintiff adequately pleaded an exception to sovereign immunity under Mo. Rev. Stat. § 537.610.1, by pleading that the City obtains insurance through the Public Facilities Protection Corporation ("PFPC") or, alternatively, that the PFPC serves as a self-insurance plan.  *Id.* at *7.  The Court also rejected the Supervisors' claim of official immunity with respect to the state-law claims because the plaintiffs adequately alleged an exception to official immunity based on the Supervisors' bad faith or malice.  *Id.* at *7-8.  Finally, the Court held that the plaintiff's assault, battery, and infliction of emotional distress claims were cognizable under Missouri law and not necessarily duplicative.  *Id.* at 8.

As noted in *Thomas*, other judges in this District have come to the same or similar conclusions in *Stockley* protest cases presenting these legal arguments.  *See, e.g.*, *Alston v. City of Saint Louis, Missouri*, No. 4:18-CV-01569-AGF, 2019 WL 2869896, at *1 (E.D. Mo. July 3, 2019); *Laney v. City of St. Louis, Mo*., No. 4:18 CV 1575 CDP, 2019 WL 2423308 (E.D. Mo. June 10, 2019); *Aldridge v. City of St. Louis, Mo*., No. 4:18-CV-1677 CAS, 2019 WL 1695982 (E.D. Mo. Apr. 17, 2019).  Upon careful review of the briefs and the record in the present case, the Court finds that its reasoning in *Thomas* applies equally to the arguments asserted by the parties here.  The Court therefore comes to the same conclusion.

## **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss Amended Complaint and Alternative Motion to Strike (Doc. No. 34) is **GRANTED in part and DENIED in part**. The motion is **GRANTED** only as to the failure-to-train claim included in Count IV (the remainder of Count IV survives dismissal) and the request for punitive damages on the state-law claims against the City of St. Louis and against Gerald Leyshock, Timothy Sachs, Scott Boyher, Randy Jemerson, Matthew Karnowski, and Brian Rossomanno in their official capacities. The motion is otherwise **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' First Motion to Dismiss and Alternative Motion to Strike (Doc. No. 17) is **DENIED as moot**.

**IT IS FURTHER ORDERED** that, on or before **August 12, 2019**, Plaintiff shall show cause in writing why the complaint should not be dismissed without prejudice as to Defendant Daniel Chamblin, for lack of timely service. Failure to comply with this Order will result in the dismissal of Defendant Chamblin without prejudice.

A Rule 16 Conference will be set by separate Order.

Dated this 24th day of July, 2019

_____
**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**